**UNITED STATES of America, Plaintiff-Appellant,**

v.

**The STATE OF TEXAS, Texas Alcoholic Beverage Commission and W.S. McBeath, as Administrator of the Texas Alcoholic Beverage Commission, Defendants-Appellees.**

No. 81–1597.

United States Court of Appeals, Fifth Circuit.

Jan. 10, 1983.

As Amended on Denial of Rehearing and Rehearing En Banc March 17, 1983.

Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., Michael L. Paup, Chief, Appellate Sec., Richard Farber, Steven I. Frahm, Ernest J. Brown, Attys., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Gilbert J. Bernal, Jr., Asst. Atty. Gen., Austin, Tex., for State of Tex.

Clark, Thomas Winters & Shapiro, Mary Joe Carroll, Austin, Tex., for Licensed Distributors, Inc.

Before BROWN, GEE and JOLLY, Circuit Judges.

GEE, Circuit Judge:

### INTRODUCTION.

The Texas Alcoholic Beverage Code incorporates a three tiered regulatory scheme embracing (1) nonresident sellers, (2) resident wholesalers and (3) resident retailers of distilled alcoholic beverages. Each is required to obtain a permit for the activity to be conducted. Tex.Alco.Bev.Code Ann., § 11.01(a) (Vernon 1978). Nonresident sellers may sell only to wholesale permit holders authorized to import alcoholic beverages into Texas. Id. §§ 19.01, 20.01, 37.01. In turn, these wholesale permit holders sell to resident retailers, designated under the code as package store permit holders. Id. § 22.01. In addition to this tiered regulatory scheme, the code requires wholesale permit holders to pay a tax of $2 for each gallon of distilled spirits sold.[1] Id. § 201.-03(a).

At some point during the winter of 1978, several nonappropriated fund instrumentalities[2] (NFIs) of the Department of the Navy concluded that the Department of Defense's alcohol procurement regulation, 32 C.F.R. § 261.4(c)[3], permitted the importation of alcoholic beverages directly from nonresident sellers, notwithstanding their designation as package store permit holders under the code. The Texas Alcoholic Beverage Commission (TABC) disagreed with this reading of section 261.4(c) and expressly forbad nonresident sellers from selling directly to the NFIs.

In a bulletin sent to all wholesalers and nonresident sellers on January 30, 1978, the TABC warned of its readiness to take legal action to prevent circumvention of the gallonage tax on the military's procurement of alcoholic beverages. A similar bulletin was issued on July 10, 1978, indicating that any attempts by nonresident sellers to avoid the gallonage tax by delivering direct orders to the military would be vigorously challenged. In particular the bulletin noted that "any deliberate violation of the law is unquestionably a ground for cancellation of permits."[4] At a later date the TABC initiated proceedings against Frank-Lin Distillers of San Jose, California, for the "unauthorized" delivery of alcoholic bever-

1. The State of Texas argues vigorously that its gallonage tax falls upon the wholesaler and not the government, and that the gallonage tax is a method of defraying the costs of regulation rather than producing revenue. Because our analysis turns on the proposition that the state may not, in any manner, regulate the distribution or consumption of alcoholic beverages on a federal enclave in the absence of an agreement between it and the federal government, we find no need to pass upon the validity of these arguments.

2. A nonappropriated fund instrumentality is not supported by direct government funding. NFIs are expected to support military recreational activities through the generation of profits, by virtue of the sale of alcoholic beverages or otherwise. The NFIs in question are located at the Navy's air stations in Corpus Christi, Kingsville and Beeville, Texas.

3. In pertinent part, 32 C.F.R. § 261.4(c) provides:

(1) DOD will cooperate with all duly constituted regulatory officials (local, State and Federal) to the degree that the duties of such officials are related to the furtherance of the terms of this part. However, the purchase of all alcoholic beverages for resale at any camp, post, station, base, or other place primarily occupied by members of the Armed Forces within the United States shall be in such a manner and under such conditions as shall obtain for the Government the most advantageous contract, price, and other factors considered.

4. The bulletin, dated July 10, 1978, in its entirety reads as follows:

On January 30, 1978, this agency issued a statement with regard to its position on sales to military installations. At that time it was anticipated that an attempt might be made by one or more purchasers for a military instrumentality to avoid the Texas gallonage tax by some sort of direct order to a wholesaler or non-resident seller. Information received indirectly indicates that such an attempt will be made within the near future.

The purpose of this letter is to remind you that the Alcoholic Beverage Commission will vigorously challenge any attempt to circumvent the Texas gallonage tax. The statutory law of Texas is entirely different and distinguishable from the controlling provisions in Mississippi and Louisiana where the courts have authorized tax-free sales to the military. This agency is bound and controlled solely by the laws of the State of Texas which it has the duty to enforce. Any deliberate violation of the law is unquestionably a ground for cancellation of permits.

ages to an NFI located at Chase Field, Beeville, Texas.[5]

On April 23, 1979, the United States instituted suit in the Western District of Texas seeking a declaratory judgment that the Texas regulatory scheme, as applied to purchases of alcoholic beverages by the NFIs, was unconstitutional. Specifically, the government urged that the alcohol procurement procedure described in 32 C.F.R. § 261.4(c), see n. 3 supra, by virtue of the Supremacy Clause of the United States Constitution, art. VI, cl. 2, exempted NFIs from compliance with Texas' regulatory procedures. The district court reasoned that the Supremacy Clause would be implicated and such an exemption would occur only if the two sets of legislation posed an irreconcilable conflict. See Department of Alcoholic Beverage Control v. Williams, —— U.S. ——, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1982). Finding that the federal and state regulations could coexist without violence to either, the district court concluded that the Alcoholic Beverage Code was constitutional as applied to the NFIs.

For the reasons stated below, we find that the district court was mistaken in its application of the Supremacy Clause and its attendant preemption principles. Accordingly, we reverse its judgment.

## THE ANALYTICAL FRAMEWORK

It is beyond peradventure that the Supremacy Clause of the United States Constitution is implicated only where Congress exercises a granted power. See U.S. Const. amend. X. Within these limited contours federal law will preempt the operation of any corresponding state legislation where there is an actual conflict between the two sets of legislation such that both cannot stand. See Williams, supra. This general rule is more easily stated than applied. In consequence, courts have employed a two-tier analytical framework to determine the applicability and effect of the preemption doctrine in a given case.

The threshold consideration of the traditional analysis is one of jurisdiction. Here, the relevant inquiry is whether the subject matter at issue is within the exclusive domain of the federal government. If it is purely a federal concern, the Supremacy Clause preempts all state regulation that would vitiate the impact or intent of the federal regulatory scheme.[6] In determining whether the federal government occupies a zone of exclusive authority it is necessary to look beyond the facial implications of the issues to whether the essence of the subject matter is inextricably linked to traditional notions of sovereignty. See Johnson v. State of Maryland, 254 U.S. 51, 41 S.Ct. 16, 65 L.Ed. 126 (1920) (a state cannot indirectly regulate the delivery of mail by requiring a driver's license where federal statute expressly provides that mail carrier's competence to drive is to be determined by superiors); Mayo v. United States, 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504 (1943) (a state cannot impose an inspection fee directly on the United States); Miller v. State of Arkansas, 352 U.S. 187, 188, 77 S.Ct. 257, 257–58, 1 L.Ed.2d 231 (1956) (a state cannot require licensing of construction contractor where work is to be done exclusively on a federal enclave).

Beyond those areas where Congress exercises plenary power, the traditional analysis requires a balancing of federal and state interests to determine the applicable law. To this end (1) the pervasiveness of the federal regulatory scheme, (2) whether federal occupation of the field is necessitated by a need for national uniformity, (3) the

---

**5.** As a result of this delivery Frank-Lin's license was suspended for seven days.

**6.** State regulatory schemes that merely impose upon federal regulation or activity, without vitiating its impact or intent, can be valid exercises of state authority. See Penn Dairies v. Milk Control Commission, 318 U.S. 261, 270–71, 63 S.Ct. 617, 621, 87 L.Ed. 748 (1943) (where incidence of tax not directly on government there is no violation of the Supremacy Clause); Hancock v. Train, 426 U.S. 167, 179–80, 96 S.Ct. 2006, 2013, 48 L.Ed.2d 555 (1976) ("[n]either the Supremacy Clause nor the Plenary Powers Clause bars all state regulation which may touch the activities of the federal government").

danger of conflict between state laws and the administration of federal programs, and (4) whether the state regulation infringes upon individual constitutional guarantees, are the primary considerations to be weighed. *See Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 851 (1941); *Pennsylvania v. Nelson,* 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956). *See also,* Hirsh, Toward a New View of Federal Pre-emption, 1972 U.Ill.L.F. 515. Because the above considerations are for the most part reasoned judgment calls, the line of demarcation between federal and state authority is often unclear. It is against this background that our analysis of the present action begins.

## EXCLUSIVE ZONE OF FEDERAL JURISDICTION

The district court held that absent an irreconcilable conflict between the Alcoholic Beverage Code and the government procurement regulation in question, the Code must necessarily prevail because it implicates the Twenty-first Amendment. In reaching this conclusion the trial judge relied upon our opinion in *Castlewood International Corporation v. Simon,* 596 F.2d 638 (5th Cir.1979), *cert. granted,* 446 U.S. 949, 100 S.Ct. 2914, 64 L.Ed.2d 806, *j'ment vacated and remanded,* 626 F.2d 1200 (5th Cir. 1980). There we rejected an administrative agency's attempt to override a state regulation relating to liquor, reasoning:

> [A]ny analysis of the validity of a state statute regulating liquor does not proceed via the traditional route for testing the constitutionality of state statutes. We must proceed from a vantage point of presumed state power and then ask whether there are any limitations to that power, always keeping in mind that where intoxicating liquors are concerned, great deference must be accorded a comprehensive state regulatory scheme. *Id.* at 642.

While we acknowledge the continued vitality of *Castlewood* it simply does not govern the present case.

The touchstone of our analysis in *Castlewood* was that the Twenty-first Amendment represents a significant departure from the normal operation of the Commerce Clause and as such permits state regulation that would otherwise fail as a result of conflicting with that constitutional provision. *Id.* Because our examination revealed the absence of a federal interest of sufficient magnitude, beyond those expressly preempted by the Twenty-first Amendment, we held that the state regulatory scheme must prevail. It is important to note that a balancing of interests occurred only after a threshold, albeit implicit, determination of concurrent authority and jurisdiction and an equally implicit finding that the federal government's interest was not premised solely upon the Commerce Clause. Beyond these narrow limits *Castlewood* has no vitality. The Twenty-first Amendment does not, indeed cannot, touch upon those circumstances or transactions where either the federal government occupies a zone of exclusive authority or state regulation significantly affects an area of federal concern beyond the Commerce Clause.

A major premise of the district court's analysis was its assumption that the State of Texas has the requisite jurisdiction, by virtue of the Twenty-first Amendment, to impose its legislative will upon federal enclaves located within the State. Neither our reading of the plain language of that constitutional amendment [7] nor the relevant case law support such an assumption. In the seminal case of *Collins v. Yosemite Park & Curry Co.,* 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502 (1938), the State of California's liquor licensing requirements were held not to apply to a corporation selling alcoholic beverages at the Yosemite National Park on land leased from the federal govern-

---

7. The Twenty-first Amendment provides:

Section 1. The eighteenth article of amendment to the Constitution of the United States is hereby repealed.

Section 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

ment. *Id.* at 533, 58 S.Ct. at 1016. The Court reasoned that because regulation is inextricably tied to traditional notions of sovereignty, California lacked jurisdiction, by virtue of the Twenty-first Amendment or otherwise, to regulate the sale, distribution or consumption of alcohol on a federal enclave located within the State. *Id.* at 538, 58 S.Ct. at 1018.

Similarly, in *United States v. Tax Commission of Mississippi,* 412 U.S. 363, 93 S.Ct. 2183, 37 L.Ed.2d 1 (1973), the Court held that the Twenty-first Amendment has no application where transactions relating to alcoholic beverages occur between out-of-state suppliers and military enclaves located within a state. *Id.* at 380, 93 S.Ct. at 2193. Mississippi had sought to regulate the procurement of alcoholic beverages by four NFIs located in that State by compelling them to make purchases either from the State Tax Commission, at a 17 to 20 percent markup, or directly from distillers who were obligated to collect and remit the same markup to the State. Because two of the four NFIs were located on military installations that were "exclusive" as opposed to "concurrent" jurisdiction facilities, the case initially turned on the resolution of a conflict between the State's asserted scope of the Twenty-first Amendment and the exclusive federal authority over such military facilities as directed by Article I, Section 8, Clause 17 of the United States Constitution.[8] In balancing these competing arguments the Court held that the Twenty-first Amendment was not implicated because there was no importation of liquor into Mississippi "for delivery or use therein." *Id.* at 375, 93 S.Ct. at 2191; *see supra* n. 7. To this end the Court reasoned

[I]t suffices to note that any legitimate state interest in regulating the importation into Mississippi of liquor purchased on the bases by individuals cannot effect an extension of the State's territorial jurisdiction so as to permit it to regulate the distinct transactions between the suppliers and the nonappropriated fund activities that involve only the importation of liquor into federal enclaves which 'are to Mississippi as the territory of one of her sister states or a foreign land,' 340 F.Supp. [903], at 906. *To conclude otherwise would be to give an unintended scope to a provision designed only to augment the powers of the States to regulate the importation of liquor destined for use, distribution, or consumption in its own territory, not to 'increase its jurisdiction,'* Collins v. Yosemite Park & Curry Co., 304 U.S., at 538, 58 S.Ct. at 1018, 82 L.Ed. 1502.

*Id.* at 378, 93 S.Ct. at 2192. (emphasis supplied).

After disposing of this issue the court remanded the case for further proceedings, including the issue of whether the 'concurrent' jurisdiction facilities were exempt from state regulation.

After remand, the case was again appealed to the Supreme Court, 421 U.S. 599, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975) ("Tax Commission II"). In the course of concluding that the legal incidence of Mississippi's markup was on the United States, the Court faced a challenge, on the basis of the Twenty-first Amendment, to the federal government's constitutional immunity from

---

**8.** Article 1, Section 8, cl. 17 of the United States Constitution provides:

> Section 8. The Congress shall have Power...
>
> \*   \*   \*   \*   \*   \*
>
> 17. To exercise exclusive Legislation in all Cases whatsoever over such District (not exceeding ten miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of Government of the United States, and to exercise like Authority over all Places purchased by the consent of the Legislature of the State in which the same shall be, for the Erection of Forts,

> Magazines, Arsenals, dock-Yards, and other needful Buildings;
>
> The record reveals some doubt as to whether the military installations here are subject to concurrent or exclusive jurisdiction. Because of the Supreme Court's decisions in *Tax Commission, supra,* and *Tax Commission (II),* 421 U.S. 599, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975), we believe that the present issues are unaffected by such distinctions since there is no contention that the State has reserved the right to regulate alcoholic beverages on those enclaves subject to concurrent jurisdiction.

taxation by the states. *Id.* at 601, 95 S.Ct. at 1874. The Court's rejection of this challenge was unequivocal, summarizing its analysis of the scope of a state's regulatory powers under the Twenty-first Amendment as follows:

> When the case was last here we held that 'the Twenty-first Amendment confers no power on a State to regulate—whether by licensing, taxation, or otherwise—the importation of distilled spirits into territory over which the United States exercises exclusive jurisdiction [pursuant to Art. I, § 8, cl. 17, of the Constitution].' 412 U.S., at 375, 37 L.Ed.2d 1, 93 S.Ct. 2183, 2191; *see Collins v. Yosemite Park & Curry Co.,* 304 U.S. 518, 538, 82 L.Ed. 1502, 58 S.Ct. 1009, 1018 (1938). *Cf. James v. Dravo Contracting Co.,* 302 U.S. 134, 140, 82 L.Ed. 155, 58 S.Ct. 208, 212, 114 ALR 318 (1937). We reach the same conclusion as to the concurrent jurisdiction bases to which Art. I, § 8, cl. 17, does not apply: 'Nothing in the language of the [Twenty-first] Amendment nor in its history leads to [the] extraordinary conclusion' that the Amendment abolished federal immunity with respect to taxes on sales of liquor to the military on bases where the United States and Mississippi exercise concurrent jurisdiction.

421 U.S. at 613–14, 95 S.Ct. at 1880–81.

We are persuaded that *Yosemite Park* and its progeny do little more than reaffirm the general proposition that the federal government, as a sovereign and absent a voluntary relinquishment of its sovereign rights, exercises exclusive jurisdiction over federal enclaves. We are also persuaded that regulation is an incident of sovereignty. This is not to say that a state may not institute measures designed to prevent the unlawful diversion of alcohol destined for a federal enclave into the state's stream of commerce. *See Tax Commission, supra,* 412 U.S. at 377, 93 S.Ct. at 2192. While the functional limits of that sort of state regulation have yet to be determined, the present action does not concern it and is clearly beyond a state's regulatory powers. Like the mark-up in *Tax Commission,* there is no indication here that the Texas law

under examination "is an effort to deal with problems of diversion of liquor from out-of-state shipments destined for . . . the . . . bases." *See* Tax Commission, *supra,* at 378, 93 S.Ct. at 2192.

Accordingly, the district court's judgment is

REVERSED.