

# The Attorney General of Texas

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

901 Texas, Suite 700
.ouston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

November 23, 1983

Mr. W. S. McBeath
Administrator
Texas Alcoholic Beverage Commission
P. O. Box 13127, Capitol Station
Austin, Texas    78711

Opinion No. JM-96

Re:   Whether  the  decision  in
United States v. State of Texas,
695  F.2d  136  (5th  Cir.  1983)
prohibits    application    of
gallonage tax to sales by Texas
wholesalers to military instal-
lations

Dear Mr. McBeath:

You  have  requested  an  Attorney  General  Opinion  on  the  status  of
the $2.00 gallonage tax imposed by sections 201.02 and 201.03 of the
Texas  Alcoholic  Beverage  Code.   In  your  request,  you  asked  for
guidance  in  administering  this  tax  in  light  of  the  recent  denial  of
petitions  for  writ  of  certiorari  in  United States v. State of Texas,
et al, 695 F.2d 136 (5th Cir. 1983).  Your question is essentially as
follows:

> Has  the  decision  of  the  Court  of  Appeals  for
> the  Fifth  Circuit  as  a  matter  of  law  effectively
> created  an  exclusion  from  the  Texas  Gallonage  Tax
> on  sales  made  by  Texas  Wholesalers  for  facilities
> operating  on  military  installations?

The  United  States  Court  of  Appeals  focused  its  analysis  in  United
States v. State of Texas on the Supremacy Clause of the United States
Constitution.   The   Court   stated   that   the   Supremacy   Clause   is
implicated  only  where  the  United  States  Congress  exercises  a  granted
power.   The  Court  went  on  to  state  that  in  those  instances  the  federal
law  will  preempt  the  operation  of  any  corresponding  state  legislation
where  there  is  an  actual  conflict  between  the  state  and  federal
legislation.

In  determining  whether  or  not  the  Texas  Alcoholic  Beverage
Commission's  enforcement  of  the  "three  tiers"  (manufacturing  tier,
wholesaler  tier,  and  retailer  tier)  regulatory  scheme  outlined  in  the
Texas  Alcoholic  Beverage  Code  conflicted  with  the  Department  of
Defense's  alcoholic  procurement  regulation,  the  Court  of  Appeals
employed  a  two  stage  analysis.   The  first  step  questioned  whether  the

Department of Defense's alcohol procurement regulation was within the exclusive domain of the Federal Government.  The Court observed that if it did determine that United States v. State of Texas involved purely a federal concern, then the Supremacy Clause would preempt "all state regulation that would vitiate the impact or intent of the federal regulatory scheme."  The Court's second step addressed a conflict between a state and the federal government where Congress did not exercise plenary power.  In this situation, the Court pointed to a traditional analysis that required balancing of federal and state law.

The Court cited Castlewood International Corporation v. Simon, 596 F.2d 638 (5th Cir. 1979), cert. granted, 446 U.S. 949, judgmt vacated and remanded, 626 F.2d 1200 (5th Cir. 1980) as an example of a Twenty-first Amendment case that involved the traditional analysis requiring balancing of federal and state law.  In Castlewood, the Court said there was no zone of exclusive federal authority and under the balancing process of the two step analysis the Court found no federal interest of sufficient magnitude to tip the balance against the state legislation.

The Court distinguished United States v. State of Texas from the Castlewood type of Twenty-first Amendment case by categorizing United States v. State of Texas within a class of cases that included Collins v. Yosemite Park and Curry Company, 304 U.S. 518, (1938); United States v. Tax Commission of Mississippi, 412 U.S. 363, (1973); and United States v. Tax Commission of Mississippi, 421 U.S. 599, (1975) ("Tax Commission II").  By the Court's analysis, these cases belonged to the category of cases where the Federal Government occupies a zone of exclusive authority.  The Court in the second Tax Commission of Mississippi case held that the Twenty-first Amendment conferred

> no power on a State to regulate - whether by licensing, taxation, or otherwise - the importation of distilled spirits into territory over which the United States exercises exclusive jurisdiction.

This construction is buttressed by the court's language in United States v. Texas:

> the state may not, in any manner, regulate the distribution or consumption of alcoholic beverages on a federal enclave in the absence of an agreement between it and the federal government . . .

Id., at 137, n. 1.

Citing the Yosemite Park and Tax Commission of Mississippi cases, the Court declared that the Federal Government as a sovereign, absent voluntary relinquishment, exercises exclusive jurisdiction over federal enclaves such as United States Armed Forces facilities and that regulation in these enclaves is an incident of sovereignty.

The Court applied its exclusive zone of federal jurisdiction theory in United States v. State of Texas and decided that the subject matter of United States v. State of Texas is within the exclusive domain of the Federal Government. Therefore, the Court reasoned that the Supremacy Clause of the United States Constitution preempts all state regulation that would "vitiate the impact or intent of the federal regulatory scheme."

The "federal regulatory scheme" in question in United States v. State of Texas is the Department of Defense's alcohol procurement regulation 32 C.F.R. section 261.4(c). The intent of that Department of Defense regulation is to insure the purchase of alcoholic beverages by the United States Armed Forces "in such a manner and under such conditions as shall obtain for the Government the most advantageous contract, price, and other factors considered." The Court's decision in United States v. State of Texas holds that this Department of Defense regulation preempts any state law which would prevent the United States Armed Forces' facilities from obtaining for the Federal Government "the most advantageous contract, price, and other factors considered."

Under the Court's reasoning in United States v. State of Texas (especially given its reliance on the Tax Commission of Mississippi cases) the $2.00 gallonage tax imposed by the Texas Alcoholic Beverage Code would be an invalid exercise of state regulation-by-taxation on the importation of distilled spirits into territory over which the United States exercises exclusive jurisdiction. Furthermore, under United States v. State of Texas, the Department of Defense's alcohol procurement regulation controlling the purchase of alcoholic beverages for resale on military installations preempts any state law which would prevent the United States Armed Forces from obtaining for the Federal Government "the most advantageous contract, price, and other factors considered." The imposition of the $2.00 gallonage tax arguably prevents the United States Armed Forces from obtaining for the Federal Government "the most advantageous contract, price, and other factors considered." Therefore, it is our opinion that the $2.00 gallonage tax of sections 201.02 and 201.03 of the Texas Alcoholic Beverage Code cannot be imposed on sales of distilled spirits between Texas wholesalers and military installations of the United States Armed Forces located in Texas.

## S U M M A R Y

The decision in United States v. State of Texas, 695 F.2d 135 (5th Cir. 1983) prohibits imposition of the $2.00 gallonage tax provided by sections 201.02 and 201.03 of the Texas Alcoholic Beverage Code on sales of distilled spirits by Texas wholesalers to military installations located in Texas.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Charles A. Gruber
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Colin Carl
Susan Garrison
Charles Gruber
Jim Moellinger
Nancy Sutton