UNITED STATES of America, Plaintiff,

v.

STATE OF SOUTH CAROLINA and C.K. Powell, K.E. Allen, and M.S. Ingram, Commissioners of the South Carolina Alcoholic Beverage Control Commission, Defendants.

Civ. A. No. 81–1867–0.

United States District Court,
D. South Carolina,
Columbia Division.

July 13, 1983.

Henry Dargan McMaster, U.S. Atty., Cameron Currie, Asst. U.S. Atty., Columbia, S.C., William L. Shraberg, Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

C. Tolbert Goolsby, J.P. Wilson, David C. Eckstrom, Asst. Attys. Gen., Columbia, S.C., for S.C.

## MEMORANDUM OPINION AND ORDER

MATTHEW J. PERRY, Jr., District Judge.

This action was commenced by the United States against the State of South Carolina and the Commissioners of the South Carolina Alcoholic Beverage Control Commission to obtain a declaratory judgment that Sections 61–7–300 and 61–9–1270 of the Code of Laws of South Carolina, 1976 [1] impose an unconstitutional tax on federal instrumentalities and a permanent injunction against the implementation of those statutes. On August 27, 1981 three days before the date on which the statutes were to become effective, this Court entered a preliminary injunction against enforcement of the statutes. The matter is now before the Court on cross motions for summary judgment, filed by the parties pursuant to Rule 56, Federal Rules of Civil Procedure, with all parties asserting the absence of genuine issues of material fact and the entitlement to judgment in their favor, respectively.

The facts are simple and may be succinctly stated. The United States has six military installations located in South Carolina over which exclusive federal jurisdiction is exercised. Each installation has officials whose duties include the procurement of alcoholic liquors, beer and wine for resale within its installation club system. Those procurement officials are required by regulation to purchase alcoholic beverages at the most advantageous prices. Profits derived from resales are used to provide for the welfare and morale of the military. Military procurement personnel generally purchase these beverages from sellers situated outside the State of South Carolina without regard to whether those sellers hold licenses to traffic in alcoholic beverages within South Carolina. This

---

**1.** § 61–7–300. Sales of alcoholic liquor to military establishments in state; tax free except for case tax; regulations; penalty.

(a) All alcoholic liquors purchased by military establishments located in the State shall be purchased from wholesalers licensed in this State to sell such liquors. Purchase orders from the military establishment shall be furnished to a licensed wholesaler and the order shall be processed and delivered by the wholesaler as nonmilitary orders are processed and delivered except that delivery shall be made to the military establishment rather than to a licensed retailer.

(b) Alcoholic liquors sold to the military establishment shall be tax free except for the case tax imposed under § 12–33–420, which tax shall be absorbed by the wholesaler and not passed on to the purchaser.

(c) The Tax Commissioner and the Alcoholic Beverage Control Commission may promulgate regulations necessary to implement the provisions of this section.

(d) Any registered producer who sells alcoholic beverages in violation of this section shall have its certificate of registration, as provided for in § 61–7–80, suspended for such period as the Alcoholic Beverage Control Commission shall determine.

§ 61–7–1270. Sales of beer and wine to military establishments in state; exempt from beer and wine taxes; regulations; penalty.

(a) All beer and wine purchased by military establishments located in the State shall be purchased from wholesalers licensed in this State to sell such beer and wine. Purchase orders from the military establishments shall be furnished to a licensed wholesaler and the orders shall be processed and delivered by the wholesaler as nonmilitary orders are processed and delivered except that the delivery shall be made to the military establishments rather than to a licensed retailer.

(b) Beer and wine sold to the military establishments shall be exempt from state beer and wine taxes.

(c) The Tax Commission and the Alcoholic Beverage Control Commission may promulgate regulations necessary to implement the provisions of this section.

(d) Any registered producer who sells beer and wine in violation of this section shall have its certificate of registration, as provided for in § 12–21–1510, suspended for such period as the Alcoholic Beverage Control Commission shall determine.

practice, the plaintiff argues, has ensured that the acquisition prices of such beverages have been as low as possible.[2]

Sections 61–7–300 and 61–9–1270, Code of Laws of South Carolina, were enacted and became effective September 1, 1981. These statutes require sweeping changes in the practices now pursued by the procurement officials above described in that they require them to purchase all alcoholic beverages from persons who hold South Carolina licenses authorizing them to wholesale such beverages. These statutes also require the imposition of the alcoholic beverage taxes provided in Sections 12–33–410 and 12–33–420 of the Code of Laws of South Carolina, 1976. The statutes have the overall effect of making the military's acquisition costs of alcoholic beverages more expensive than they otherwise would be. Moreover, the plaintiff argues, there is a direct conflict between the applicable federal directives and regulations and the provisions of these statutes.

Subsection d of each statute, §§ 61–7–300(d) and 61–9–1270(d) command that any registered producer who sells beverages in violation thereof shall have its certificate of registration suspended for such period as the Alcoholic Beverage Control Commission shall determine. Plaintiff argues that these provisions will place sellers to the plaintiff's military services who also happen to be registered producers or who happen to be represented in South Carolina by registered producers in the position of trying to honor prices previously agreed upon with federal officials while at the same time trying to obey the requirements of state law.

■ Where Congress exercises a duly granted power, federal law preempts the operation of any corresponding state legislation in conflict therewith. *Rice v. Williams*, 458 U.S. 654, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1982). *See United States v. Georgia Public Service Commission*, 371 U.S. 285, 83 S.Ct. 397, 9 L.Ed.2d 317 (1963); (Georgia policy which undermined the Federal Property and Administrative Services Act of 1949, must give way to federal law); *Paul v. United States*, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963) (Supremacy Clause barred State from enforcing minimum wholesale price regulation with respect to milk sold to the United States at military installations when regulation conflicts with federal procurement policy which demanded competition); *Free v. Bland*, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962) (contrary Texas community property law will not prevent United States savings bonds held in co-ownership from passing to surviving co-owner upon death of the other co-owner); *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 77 S.Ct.

---

**2.** The plaintiff has filed with this Court the affidavits of Michael A. Magalski, First Lieutenant, U.S. Army, the deputy installation club manager at Fort Jackson, South Carolina; Mr. Brent E. Snodgrass, Non-Appropriated Fund Financial Management Officer at Shaw Air Force Base, South Carolina; Ethel M. McMillan, Chief, Non-Appropriated Fund Financial Management Bureau, Myrtle Beach Air Force Base; Mr. James W. Halsten, Chief, Morale, Recreation and Welfare Division, Charleston Air Force Base, South Carolina; Ms. Virginia Stone Crocker, Manager, Consolidated Package Store, Naval Weapons Station, Charleston, South Carolina; and Mr. John B. Steele, Manager, Consolidated Package Store, Naval Station, Charleston, South Carolina.

In each instance, the affiant asserts that applicable Defense Department directives and service regulations require that alcoholic beverages be purchased from those suppliers which offer the most advantageous price, regardless of location in or out of this state. *See* Defense Department Directives 1330.15 (32 C.F.R. 261.4C(1)); Army Regulations 210–65 & 230–1; Air Force Regulations 215–1.

Each affiant further asserts that, acting under these applicable Department of Defense and service regulations, they have determined that the most advantageous prices are largely those obtained from distillers, manufacturers, and distributors located outside the state of South Carolina.

Each affiant further asserts that the application of § 61–7–300 will preclude the continuation of this practice of purchasing alcoholic beverages, wine, and beer under the most advantageous conditions, will force the procurement of alcoholic beverages from sources licensed within the State of South Carolina at substantially higher prices, and will thereby substantially reduce the funds returned to morale, recreation, and welfare activities at the various installations.

257, 1 L.Ed.2d 231 (1956) (Arkansas statutes held unconstitutional when they conflicted with Armed Services Procurement Act of 1947); *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1924) (State laws may not interfere with those laws of Congress which are enacted in pursuance of the Constitution).

Thus, the statutes and regulations of the United States are the "Law of the Land," as that phrase is used in Supremacy Clause of the United States Constitution, Article VI.

▉ This rule is more easily stated than applied. Therefore, a two tiered analytical framework exists for determining whether in a given case the doctrine of preemption applies. The first item for consideration is jurisdiction. Here the relevant inquiry is whether the subject matter at issue is within the exclusive domain of the federal government. Where the subject is clearly of federal concern, the Supremacy Clause preempts all state regulation which irrevocably conflicts with the impact or intent of the federal law. Thus, for example, a state cannot indirectly regulate the delivery of mail by requiring a driver license where a federal statute provides that a mail carrier's competence to drive shall be determined by his superiors. *Johnson v. Maryland*, 254 U.S. 51, 41 S.Ct. 16, 65 L.Ed. 126 (1920). Nor may a state impose an inspection fee upon the United States. *See Mayo v. United States*, 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504 (1943). A state may not require the licensing of a construction contractor where work is to be performed exclusively within a federal enclave. *Miller v. State of Arkansas*, 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956). And "unshaken, rarely questioned, ... is the principle that possessions, institutions and activities of the federal Government itself in the absence of express congressional consent are not subject to any form of state taxation." *United States v. County of Allegheny*, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944).

▉ The second item for consideration is the requirement of a balancing of federal and state interests. This balancing process requires a weighing of (1) the provision of the federal regulatory scheme; (2) whether federal occupation of the field is necessitated by a need for national uniformity; (3) the danger of conflict between state laws and the administration of federal programs; and (4) whether the state regulation infringes upon individual constitutional guarantees. *United States v. State of Texas*, 695 F.2d 136 (5th Cir.1983). *See Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941); *Pennsylvania v. Nelson*, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956).

▉ Proceeding in accordance with the above stated analytical approach it is noted that among the powers conferred upon Congress in Article I, Section 8 of the Constitution are the powers "to provide for organizing, arming, and disciplining the militia, and for governing such part of them as may be employed in the service of the United States * * *," and "[T]o make Rules for the Government and Regulations of the land and naval Forces * * *." In addition to these powers, Congress is also granted the power under Article IV, Section 3, Clause 2 of the Constitution "to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States * * *." Pursuant to that authority, in 1951, Congress enacted 50 U.S.C.App. Section 473 which provides that:

The Secretary of Defense is authorized to make such regulations as he may deem to be appropriate governing the sale, consumption, possession of or traffic in beer, wine, or any other intoxicating liquors to or by members of the Armed Forces * * * at or near any camp, station, post, or other place primarily occupied by members of the Armed Forces * * *.

In accordance with that authority the Secretary of Defense promulgated Department of Defense Directives 1330.15, 32 C.F.R., Section 261 (1973) which sets forth the Department's policy governing the procurement of alcoholic beverages by all com-

ponents of the armed services through on-base outlets and provided *inter alia* as follows:

> ... the purchase of all alcoholic beverages for resale at any camp, post, station, base, or other place primarily occupied by members of the Armed Forces within the United States shall be in such a manner and under such conditions as shall obtain for the Government the most advantageous contract, price and other factors considered.

Each of the military services has promulgated similar regulations. Army Regulations 210–65 (1978); Navy Regulations 1746.5A; Air Force Regulations 215.1.

Pursuant to the Defense Department Directive to procure the most advantageous contract price and other factors, officials at military installations in South Carolina have most often purchased alcoholic beverages directly from the out-of-state manufacturers, distillers or importers. The prices available from out-of-state distillers are more advantageous. Moreover, many products are unavailable from in-state wholesalers. Historically, revenues generated by the resale of alcoholic beverages on military bases have been used to provide for the morale, recreation and welfare of military personnel. *See Falls City Brewing Co. v. Reeves*, 40 F.Supp. 35 (W.D.Ky. 1941).

The Government argues that South Carolina's new statutory scheme would have the obvious effect of requiring that procurement be limited to state licensed wholesalers and that such procurement would be more expensive and more difficult. Further, it is argued that the prices available from out-of-state distillers are much more advantageous and that, moreover, those distillers give the military substantial per case discounts. Finally, the Government argues that the challenged statutes require the military to ignore Department of Defense Directive 1330.15 (32 C.F.R. 261.-4(c)(1)) to procure the most advantageous contract, price and other factors considered.

South Carolina argues that there is no conflict between its statutes and the federal regulation and relies upon *United States of America v. The State of Texas, et al.*, Civil Action No. A–79–CA–79 (W.D.Tex. Oct. 27, 1981) a case factually similar to this one in which the United States District Court for the Western District of Texas held there was no conflict between the requirements of the Texas Alcoholic Beverage Code (which impose requirements similar to those imposed by South Carolina) and those of the Department of Defense Directive. The Court also observed that the Texas statutes at issue had been enacted pursuant to the Twenty First Amendment and thus enjoyed the special status accorded such laws by the United States Supreme Court. However, that case was reversed by the United States Court of Appeals for the Fifth Circuit. *United States of America v. The State of Texas, et al.*, 695 F.2d 136 (5th Cir.1983). The Fifth Circuit rejected each argument advanced by the State of Texas (the same arguments presented here by South Carolina) including the argument that the Twenty First Amendment rendered its statutes constitutional. Said the Court:

> The Twenty First Amendment does not, indeed cannot, touch upon those circumstances or transactions where either the Federal Government occupies a zone of exclusive authority or a state regulation significantly effects an area of federal concern beyond the Commerce Clause.

*See also United States v. Tax Commission of Mississippi*, 412 U.S. 363, 380, 93 S.Ct. 2183, 2193, 37 L.Ed.2d 1 (1973) where the Court held that the Twenty First Amendment has no application where transactions relating to alcoholic beverages occur between out-of-state suppliers and military enclaves located within a state.

I have considered each argument which has been presented on behalf of the State of South Carolina and find them lacking in merit. Here, Congress has exercised a power granted to it by Article I, § 8 and Article IV, § 3, Clause 2 of the United States Constitution when it enacted 50 U.S. C.App. § 473. Pursuant to the authority

delegated to him by the statute, the Secretary of Defense promulgated Department of Defense Directive 1330.15, 32 C.F.R. § 261 (1973) which set forth the Defense Department's policy governing the procurement of alcoholic beverages by all components of the armed services through on-base outlets. That Directive provides *inter alia* that

> (c) Cooperation (1) DOD will cooperate with all duly constituted regulatory officials (local, State and Federal) to the degree that the duties of such officials are related to the furtherance of the terms of this part. However, the purchase of all alcoholic beverages for resale at any camp, post, station, base, or other place primarily occupied by members of the Armed Forces within the United States shall be in such a manner and under such conditions as shall obtain for the Government the most advantageous contract, price and other factors considered.
>
> (2) This policy of cooperation is not to be construed or represented as an admission of any legal obligation to submit to State control.

The Defense Department Directive and military regulations at issue in this case are consistent with the statutory authorization contained in 50 U.S.C.App. § 473. Together they constitute the law of the land concerning "the sale, consumption, possession of or traffic in beer, wine, or any other intoxicating liquors to or by members of the Armed Forces * * * at or near any camp, station, post or other place primarily occupied by members of the Armed Forces * * *."

Sections 61–7–300 and 61–9–1270 of the Code of Laws of South Carolina (1976) impose requirements upon military establishments located within South Carolina to purchase all alcoholic beverages from wholesalers licensed by the State. The case tax on liquors ($1.98 per standard case) is applied to sales to military establishments although the tax is not supposed to be passed on the purchaser. S.C.Code Section 61–7–300(b). Any registered producer who sells alcoholic beverages in violation of these statutes risks having its certificate of registration suspended. S.C.Code Sections 61–70–300(d) and 61–9–1270(d). It may not be gainsaid that the statutes which plaintiff challenge here are in conflict with Department of Defense Directive 1330.15, 32 C.F.R. § 261 (1973) and are thus in violation of the Supremacy Clause of the United States Constitution. United States Constitution, Art. 6, cl. 2. *United States v. Tax Commission of Mississippi,* 412 U.S. 363, 93 S.Ct. 2183, 37 L.Ed.2d 1 (1973).

Now therefore, in accordance with the reasoning and the principles set forth herein, the defendants' motion for summary judgment is denied. The plaintiff's motion for summary judgment in its favor is granted. An injunction will be issued.

IT IS SO ORDERED.

### PERMANENT INJUNCTION

In accordance with the Memorandum Opinion and Order filed today in the above entitled action.

It is hereby Ordered that the defendants, State of South Carolina and the Commissioners of the South Carolina Alcoholic Beverage Control Commission, their agents, servants and other persons acting in concert with them, be, and they are hereby permanently enjoined from enforcing or in any manner implementing the provisions of Sections 61–7–300 and 61–9–1270 of the Code of Laws of South Carolina, 1976 which purport to regulate the procurement of alcoholic beverages by instrumentalities of the United States and which *inter alia* command said Commissioners to suspend the licenses of registered producers who violate the terms of said statutes; and from doing any act in furtherance of the provisions of said statutes.

IT IS SO ORDERED.