Mr. W.S. McBeath Administrator Texas Alcoholic Beverage Commission P.O. Box 13127, Capitol Station Austin, Texas 78711
Re: Whether the decision in United States v. State of Texas,695 F.2d 136 (5th Cir. 1983) prohibits application of gallonage tax to sales by Texas wholesalers to military installations
Dear Mr. McBeath:
You have requested an Attorney General Opinion on the status of the $2.00 gallonage tax imposed by sections 201.02 and 201.03 of the Texas Alcoholic Beverage Code. In your request, you asked for guidance in administering this tax in light of the recent denial of petitions for writ of certiorari in United States v. State of Texas, et al, 695 F.2d 136 (5th Cir. 1983). Your question is essentially as follows:
 Has the decision of the Court of Appeals for the Fifth Circuit as a matter of law effectively created an exclusion from the Texas Gallonage Tax on sales made by Texas Wholesalers for facilities operating on military installations?
The United States Court of Appeals focused its analysis in United States v. State of Texas on the Supremacy Clause of the United States Constitution. The Court stated that the Supremacy Clause is implicated only where the United States Congress exercises a granted power. The Court went on to state that in those instances the federal law will preempt the operation of any corresponding state legislation where there is an actual conflict between the state and federal legislation.
In determining whether or not the Texas Alcoholic Beverage Commission's enforcement of the "three tiers" (manufacturing tier, wholesaler tier, and retailer tier) regulatory scheme outlined in the Texas Alcoholic Beverage Code conflicted with the Department of Defense's alcoholic procurement regulation, the Court of Appeals employed a two stage analysis. The first step questioned whether the Department of Defense's alcohol procurement regulation was within the exclusive domain of the Federal Government. The Court observed that if it did determine that United States v. State of Texas involved purely a federal concern, then the Supremacy Clause would preempt "all state regulation that would vitiate the impact or intent of the federal regulatory scheme." The Court's second step addressed a conflict between a state and the federal government where Congress did not exercise plenary power. In this situation, the Court pointed to a traditional analysis that required balancing of federal and state law.
The Court cited Castlewood International Corporation v. Simon,596 F.2d 638 (5th Cir. 1979), cert. granted, 446 U.S. 949, judgment vacated and remanded, 626 F.2d 1200 (5th Cir. 1980) as an example of a Twenty-first Amendment case that involved the traditional analysis requiring balancing of federal and state law. In Castlewood, the Court said there was no zone of exclusive federal authority and under the balancing process of the two step analysis the Court found no federal interest of sufficient magnitude to tip the balance against the state legislation.
The Court distinguished United States v. State of Texas from the Castlewood type of Twenty-first Amendment case by categorizing United States v. State of Texas within a class of cases that included Collins v. Yosemite Park and Curry Company,304 U.S. 518, (1938); United States v. Tax Commission of Mississippi,412 U.S. 363, (1973); and United States v. Tax Commission of Mississippi, 421 U.S. 599, (1975) ("Tax Commission II"). By the Court's analysis, these cases belonged to the category of cases where the Federal Government occupies a zone of exclusive authority. The Court in the second Tax Commission of Mississippi case held that the Twenty-first Amendment conferred
 no power on a State to regulate — whether by licensing, taxation, or otherwise — the importation of distilled spirits into territory over which the United States exercises exclusive jurisdiction.
This construction is buttressed by the court's language in United States v. Texas:
 the state may not, in any manner, regulate the distribution or consumption of alcoholic beverages on a federal enclave in the absence of an agreement between it and the federal government . . .
Id., at 137, n. 1.
Citing the Yosemite Park and Tax Commission of Mississippi cases, the Court declared that the Federal Government as a sovereign, absent voluntary relinquishment, exercises exclusive jurisdiction over federal enclaves such as United States Armed Forces facilities and that regulation in these enclaves is an incident of sovereignty.
The Court applied its exclusive zone of federal jurisdiction theory in United States v. State of Texas and decided that the subject matter of United States v. State of Texas is within the exclusive domain of the Federal Government. Therefore, the Court reasoned that the Supremacy Clause of the United States Constitution preempts all state regulation that would "vitiate the impact or intent of the federal regulatory scheme."
The "federal regulatory scheme" in question in United States v. State of Texas is the Department of Defense's alcohol procurement regulation 32 C.F.R. § 261.4(c). The intent of that Department of Defense regulation is to insure the purchase of alcoholic beverages by the United States Armed Forces "in such a manner and under such conditions as shall obtain for the Government the most advantageous contract, price, and other factors considered." The Court's decision in United States v. State of Texas holds that this Department of Defense regulation preempts any state law which would prevent the United States Armed Forces' facilities from obtaining for the Federal Government "the most advantageous contract, price, and other factors considered."
Under the Court's reasoning in United States v. State of Texas (especially given its reliance on the Tax Commission of Mississippi cases) the $2.00 gallonage tax imposed by the Texas Alcoholic Beverage Code would be an invalid exercise of state regulation-by-taxation on the importation of distilled spirits into territory over which the United States exercises exclusive jurisdiction. Furthermore, under United States v. State of Texas, the Department of Defense's alcohol procurement regulation controlling the purchase of alcoholic beverages for resale on military installations preempts any state law which would prevent the United States Armed Forces from obtaining for the Federal Government "the most advantageous contract, price, and other factors considered." The imposition of the $2.00 gallonage tax arguably prevents the United States Armed Forces from obtaining for the Federal Government "the most advantageous contract, price, and other factors considered." Therefore, it is our opinion that the $2.00 gallonage tax of sections 201.02 and201.03 of the Texas Alcoholic Beverage Code cannot be imposed on sales of distilled spirits between Texas wholesalers and military installations of the United States Armed Forces located in Texas.
 SUMMARY
The decision in United States v. State of Texas, 695 F.2d 135
(5th Cir. 1983) prohibits imposition of the $2.00 gallonage tax provided by sections 201.02 and 201.03 of the Texas Alcoholic Beverage Code on sales of distilled spirits by Texas wholesalers to military installations located in Texas.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Tom Green First Assistant Attorney General
 David R. Richards Executive Assistant Attorney General
 Prepared by Charles A. Gruber Assistant Attorney General