675 F.Supp. 555 (1987)
UNITED STATES of America
v.
STATE OF NORTH DAKOTA; Robert E. Hanson, State Treasurer of North Dakota.
Civ. No. A1-86-212.
United States District Court, D. North Dakota. Southwestern Division.
June 24, 1987.
Richard A. Correa, Tax Div., U.S. Dept. of Justice, Washington, D.C., Charles A. Miller, Jr., Asst. U.S. Atty., Bismarck, N.D., for plaintiff.
Steven E. Noack, Asst. Atty. Gen., Bismarck, N.D., for defendant.

MEMORANDUM AND ORDER
CONMY, Chief Judge.
Both parties have moved the court for summary judgment in this action for declaratory and injunctive relief. There appear to be no genuine issues of material fact, and summary judgment is therefore appropriate. Fed.R.Civ.P. 56(c).
*556 The following facts are undisputed.
Neither of the military installations in North Dakota are exclusive federal jurisdiction enclaves. The clubs and package goods stores located on military installations in North Dakota are non-appropriated fund instrumentalities of the federal government.[1] They purchase alcoholic beverages, including liquor, for resale to military personnel, retired military personnel, and their families.
The purchase of alcoholic beverages by the military is controlled by the Department of Defense Armed Services Military Club and Package Store Regulation, DoD 1015.3R, which provides as follows:
C. COOPERATION. The Department of Defense shall cooperate with local, state, and federal officials to the degree that their duties relate to the provisions of this chapter. However, the purchase of all alcoholic beverages for resale at any camp, post, station, base, or other DoD installation within the United States shall be in such a manner and under such conditions as shall obtain for the government the most advantageous contract, price and other considered factors. These other factors shall not be construed as meaning any submission to state control, nor shall cooperation be construed or represented as an admission of any legal obligation to submit to state control, pay state or local taxes, or purchase alcoholic beverages within geographical boundaries or at prices or from suppliers prescribed by any state.
32 C.F.R. § 261.4 (1986). The United States military is currently authorized to purchase alcoholic beverages, other than wine and malt beverages, from sources outside of the state in which it is situated. The military is required to procure these beverages from "the most competitive source, price and other factors considered." 10 U.S.C. § 2488 (1987).
The State has promulgated administrative regulations applicable to the sale and distribution of alcoholic beverages. Section 84-02-01-05(1) requires all persons sending or bringing liquor into the state to file with the State Treasurer a North Dakota Schedule A report of all shipments and returns for each calendar month. N.D.Admin.Code § 84-02-01-05(1) (1978). Section 84-02-01-05(7) applies specifically to liquor shipped to the military bases within the state:
All liquor destined for delivery to a federal enclave in North Dakota for domestic consumption and not transported through a licensed North Dakota wholesaler for delivery to such bona fide federal enclave in North Dakota shall have clearly identified on each individual item that such shall be for consumption within the federal enclave exclusively. Such identification must be in the form and manner prescribed and approved by the State Treasurer.
N.D.Admin.Code § 84-02-01-05(7) (1986).
On November 5, 1986, the State held a meeting of out-of-state distillers/suppliers to explain the labeling and reporting requirements for direct sales of alcoholic beverages to the federal enclaves within North Dakota.
By letter dated November 6, 1986, Kobrand Corporation informed the Air Force that the prices of alcoholic beverages would increase from $.85 to $20.50 per case due to the additional costs of affixing a North Dakota "tax stamp"[2] to each bottle of liquor.
Other out-of-state distillers/suppliers have indicated their unwillingness to deal directly with the installations located in North Dakota, but would prefer that the *557 installations deal with their in-state representatives.
The military estimates that the increased costs of dealing with in-state distributors, or continuing to deal with out-of-state distillers/suppliers under the North Dakota regulations, will be approximately $200,000  $250,000 per year.
The Department of Defense may permit different hours and days of operation than are permitted by state law. The military has a policy of permitting the sale of liquor to individuals at a lower drinking age than that permitted by the state in which the installation is located, if the base is within 50 miles of a contiguous state that has a lower drinking age.
The United States argues that North Dakota's regulations violate the supremacy clause of the United States Constitution. The United States asserts that it is required to purchase its alcoholic beverages at the "lowest cost," and that that price is obtained by dealing through out-of-state distillers and suppliers. The regulations promulgated by North Dakota increase the military's cost of obtaining liquor and conflict with federal regulation. The United States seeks declaratory and injunctive relief.
The State argues that its regulations do not conflict with federal law, and that there is therefore no violation of the supremacy clause. The State further argues that its regulations are authorized by the Twenty-First Amendment as a means of preventing the unlawful diversion of alcoholic beverages from the federal enclave into the State.

Discussion
The proper analysis in this case is to consider first whether the North Dakota regulations conflict with federal law.
Enforcement of a state regulation may be pre-empted by federal law: (1) when Congress, in enacting a federal statute, has expressed its clear intent to preempt state law; (2) when it is clear that Congress intended, by legislating comprehensively, to occupy an entire field of regulation, and has thereby left no room for States to supplement federal law; and (3) when compliance with both federal and state law is impossible, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 698-99, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984).
In this case, in order to find a conflict, this court must find that the state regulation constituted an obstacle to the accomplishment and execution of the full purposes of Congress. The Supreme Court has indicated that there is no clear test for determining the meaning and purpose of every act of Congress. Instead, a court must consider the circumstances of a particular case in making its determination. Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941) (finding that state Alien Registration Act conflicted with federal Alien Registration Act). A party may successfully enjoin enforcement of a state law only if the law on its face irreconcilably conflicts with federal policy. Rice v. Norman Williams Co., 458 U.S. 654, 659, 102 S.Ct. 3294, 3299, 73 L.Ed.2d 1042 (1982) (Sherman Act did not pre-empt state statute unless statute mandates or authorizes conduct that necessarily constitutes a violation of antitrust laws in all cases, or places irresistible pressure on private party to violate law). A state regulatory scheme that merely imposes upon a federal regulation or activity without vitiating its impact or intent can be a valid exercise of the state's authority. United States v. Texas, 695 F.2d 136, 138 n. 6 (5th Cir.1983).
This court finds that there is no confict between the state and federal regulations. "Lowest cost" is a relative term. The state's regulations may have indirectly caused the price of out-of-state supplies of alcoholic beverages to increase, but they do not prevent the federal government from obtaining those beverages at the "lowest cost." The "lowest cost" has merely increased.[3]
*558 If, however, this court found a direct conflict between the state and federal regulations, this court would then have to consider whether the state's regulations are a valid exercise of its power under the Twenty-First Amendment. Specifically, the court would have to consider whether the interests implicated by the state regulation are so closely related to the powers preserved by the Twenty-First Amendment that the regulation may prevail, notwithstanding that its requirements directly conflicted with federal policies. Capital Cities Cable, Inc. v. Crisp, 467 U.S. at 714, 104 S.Ct. at 2708. Resolution of this issue requires a pragmatic effort to harmonize state and federal powers within the context of the issues and interests at stake in each case. Id.; California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97, 109, 100 S.Ct. 937, 945, 63 L.Ed.2d 233 (1980); Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 332, 84 S.Ct. 1293, 1298, 12 L.Ed.2d 350 (1964).
Various cases have dealt with the constitutionality of state laws interfering with the sale of alcoholic beverages to federal enclaves. Generally, a state may not regulate the sale or distribution of alcoholic beverages destined for exclusive federal jurisdiction enclaves. Collins v. Yosemite Park & Curry Co., 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502 (1938) (where exclusive jurisdiction is in the United States, the Twenty-First Amendment is inapplicable and the state had no power to regulate shipments of alcoholic beverages delivered and used within the federal enclave); United States v. State Tax Commission of Mississippi, 412 U.S. 363, 93 S.Ct. 2183, 37 L.Ed.2d 1 (1973) (because state has no jurisdiction, it is not empowered by Twenty-First Amendment to tax or otherwise regulate importation of alcoholic beverages into military bases over which the United States exercises exclusive jurisdiction); United States v. Texas, 695 F.2d 136 (5th Cir.1983) (Twenty-First Amendment does not control in those areas where federal government has exclusive authority).[4]
A state may, however, institute measures designed to prevent the unlawful diversion of alcohol from the federal enclave into the state's stream of commerce. United States v. State Tax Commission of Mississippi, 412 U.S. at 377-78, 93 S.Ct. at 2192 (state may regulate and control shipments during their passagethrough a state insofar as necessary to prevent unlawful diversion of liquor into internal commerce of state); United States v. Texas, 695 F.2d at 141 (state may institute measures designed to prevent unlawful diversion of intoxicants destined for federal enclave into state's stream of commerce).
The State asserts that the purpose of the regulation is to prevent the unlawful diversion of intoxicants from the bases into the state's stream of commerce. The United States asserts that there have been no instances of unlawful diversion of intoxicants from the bases into the state's commerce. The State disputes this assertion, and argues that there have been at least two instances of unlawful diversion, and that Mr. Hanson's office has been in contact with the United States on at least three occasions to discuss resolution of the situation.
This court can envision three federal interests to be served by obtaining alcoholic beverages at the lowest possible cost: providing those beverages to servicemen and their families at a discount rate, obtaining the largest possible profit, and preventing favoritism or corruption on the part of the purchasing officer.
The last interest is not affected by the state's regulations. And nowhere is it argued that Congress intended that economical intoxicants be provided as a fringe benefit *559 for military service. The profits obtained from the sale of these beverages theoretically go toward the support of recreational activities for servicepeople and their families. It is not clear, however, that the price increase would affect the military's profits, and ultimately, the military's recreational programs. Rather, it is much more likely that the increased costs will be passed on to the military consumer.
The case law is clear that the state has the authority to promulgate regulations designed to prevent the unlawful diversion of intoxicants. Whether or not there have been actual cases of unlawful diversion is not particularly relevant for our purposes; the purpose advanced by the State does not appear to be pretextual, and is therefore a valid exercise of its core power under the Twenty-First Amendment. When the State's significant interest in preventing unlawful diversion of alcoholic beverages into its stream of commerce is measured against the federal government's interest in keeping its costs down, it is clear that the federal government's interest is not of the same stature as the goals defined by the State. Accordingly, the balance tips decisively in favor of the state law, and enforcement of the state law is not barred by the Supremacy Clause. Capitol Cities Cable, 467 U.S. at 715-16, 104 S.Ct. at 2709.
Based on the foregoing, it is the ORDER of this court
1. THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS DENIED.
2. THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IS GRANTED. THIS COURT FINDS THAT THE REGULATIONS PROMULGATED BY THE STATE ARE PERMISSIBLE UNDER THE TWENTY-FIRST AMENDMENT AS A MEANS OF PREVENTING THE UNLAWFUL DIVERSION OF INTOXICANTS FROM THE FEDERAL ENCLAVES WITHIN THE STATE INTO THE STATE'S STREAM OF COMMERCE. ACCORDINGLY, THE CLERK IS DIRECTED TO ENTER JUDGMENT OF DISMISSAL WITH PREJUDICE IN THIS CASE.
NOTES
[1] A nonappropriated fund instrumentality is not supported by direct government funding. NFIs are expected to support military recreational activities through the generation of profits, by virtue of the sale of alcoholic beverages or otherwise.
[2] The State's regulations require that the distillers and suppliers are required to affix labels to each bottle; these labels will facilitate identification of intoxicants unlawfully diverted from the federal enclaves into the state's domestic commerce. The State asserts that the labels are not tax stamps, and do not constitute an attempt to tax the shipments.
[3] The "lowest cost" might also be enhanced by eliminating minimum wage, worker's compensation and payroll withholding laws from application to breweries and distilleries; or by coercing distillers and suppliers, through threat of nuclear attack, to provide alcoholic beverages at little or no cost.
[4] The parties stipulate that the federal enclaves within the state are nonexclusive federal jurisdiction enclaves. The parties do not indicate the extent of jurisdiction retained by the state. Since the state is not attempting to regulate consumption of alcoholic beverages within the federal enclave, this court need not address the jurisdictional issue.