# UNITED STATES *v.* TAX COMMISSION OF MISSISSIPPI ET AL.

No. 74–548.   Argued April 22, 1975—Decided June 2, 1975

BRENNAN, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, MARSHALL, BLACKMUN, and POWELL, JJ., joined. DOUGLAS and REHNQUIST, JJ., filed a dissenting statement, *post*, p. 615.

*Stuart A. Smith* argued the cause for the United States. With him on the briefs were *Solicitor General Bork, Assistant Attorney General Crampton, Mark L. Evans, Jonathan S. Cohen,* and *Richard Farber.*

*Robert L. Wright* argued the cause for appellees. With him on the brief was *A. F. Summer,* Attorney General of Mississippi.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Regulation 25 of the Mississippi State Tax Commission requires out-of-state liquor distillers and suppliers to collect from military installations within Mississippi, and remit to the Commission, a tax in the form of a wholesale markup of 17% to 20% on liquor sold to the installations.[1]   The United States has four military in-

---

· *\*Andrew P. Miller,* Attorney General, *Anthony F. Troy,* Deputy Attorney General, and *William P. Bagwell, Jr.,* Assistant Attorney General, filed a brief for the Commonwealth of Virginia as *amicus curiae* urging affirmance.

[1] Regulation 25 provides:

"Post exchanges, ship stores, and officers' clubs located on military reservations and operated by military personnel (including those operated by the National Guard) shall have the option of ordering alcoholic beverages direct from the distiller or from the Alcoholic Beverage Control Division of the State Tax Commission. In the event an order is placed by such organization directly with a dis-

stallations in the State. Exclusive federal jurisdiction is exercised over two of the installations, Keesler Air Force Base and the Naval Construction Battalion Center.[2] The United States and Mississippi exercise concurrent jurisdiction over the other two installations, Columbus Air Force Base and Meridian Naval Air Station. The issue presented on this appeal is whether Regulation 25 imposes an unconstitutional state tax upon these federal instrumentalities.

I

The controversy between the United States and the Tax Commission over Regulation 25 is here for the sec-

tiller, a copy of such order shall be immediately mailed to the Alcoholic Beverage Control Division of the State Tax Commission.

"All orders of such organizations shall bear the usual wholesale markup in price but shall be exempt from all state taxes. The price of such alcoholic beverages shall be paid by such organizations directly to the distiller, which shall in turn remit the wholesale markup to the Alcoholic Beverage Control Division of the State Tax Commission monthly covering shipments made for the previous month."

[2] The United States acquired exclusive jurisdiction over the lands composing Keesler Air Force Base under the terms of § 1, 84 Stat. 835, 40 U. S. C. § 255, in a series of letters between the Governor of Mississippi and the Secretary of War. On January 9, 1945, Secretary of War Stimson wrote Governor Bailey acknowledging the acquisition of exclusive jurisdiction as required by § 255: "Accordingly, notice is hereby given that the United States accepts exclusive jurisdiction over all lands acquired by it for military purposes within the State of Mississippi, title to which has heretofore vested in the United States, and over which exclusive jurisdiction has not heretofore obtained." In 1942 and 1943, the Secretary of the Navy filed Declarations of Taking in three separate actions in the United States District Court for the Southern District of Mississippi to acquire the lands for the Naval Construction Battalion Center. In accordance with the requirement of § 255, the Department of the Navy formally accepted exclusive jurisdiction over these lands in two letters to the Governor dated December 14, 1942, and January 6, 1944.

ond time. Shortly after adoption of the Regulation, the United States asserted before the Commission that the markup was unconstitutional as a tax upon federal instrumentalities, and proposed an escrow account for the amount of the tax pending a judicial determination of its legality. The Commission refused and advised out-of-state distillers by letter that the markup "must be invoiced to the Military and collected directly from the Military . . ." or the distillers would face criminal prosecution and delistment of their authority to sell liquor in Mississippi. The United States thereupon paid the markup under protest and brought this action in the District Court for the Southern District of Mississippi. The complaint sought a declaratory judgment that Regulation 25 imposed an unconstitutional tax on federal instrumentalities, an injunction against its enforcement, and a refund of the sums paid under protest.[3] The Tax Commission moved for summary judgment. A three-judge District Court granted the Commission's motion. 340 F. Supp. 903 (1972). The District Court concluded that despite Art. I, § 8, cl. 17, of the Constitution,[4] the Twenty-first Amendment permitted the Tax Commission to apply the markup to out-of-state purchases destined for nonappropriated fund activities on the two installations, Keesler and the Naval Construction Battalion Center, over which the United States exercises

---

[3] The parties stipulated that the amount of markups paid by nonappropriated fund activities on the four military installations from September 1966 through July 31, 1971, totaled $648,421.92. Counsel for the United States estimated that by now this amount has doubled. Tr. of Oral Arg. 6.

[4] Article I, § 8, cl. 17, provides:

". . . Congress shall have Power . . . [t]o exercise exclusive Legislation . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-yards, and other needful Buildings."

exclusive jurisdiction, and that therefore, *a fortiori*, the liquor sales made on the two bases over which the United States and Mississippi exercise concurrent jurisdiction, Meridian and Columbus, are similarly subject to the Mississippi tax. We reversed and remanded for further proceedings. We held that the court erred in ruling that the Twenty-first Amendment empowered the Tax Commission to apply the markup to transactions between out-of-state distillers and nonappropriated fund activities on the two exclusively federal enclaves, and held that this conclusion also eliminated the essential premise of the District Court's decision concerning the two concurrent jurisdiction bases. 412 U. S. 363 (1973).

There were, however, other issues addressed to Regulation 25 that had not been reached by the District Court. We therefore remanded the case for that court's initial consideration and determination of the issues. In respect to the two exclusively federal enclaves, the Tax Commission argued that the markup might properly be viewed as a sales tax, and that the United States had consented to the imposition of such a "tax" under the Buck Act of 1940, now 4 U. S. C. §§ 105–110. Section 105 (a) provides that no person may be relieved of any sales or use tax levied by a State on the ground that the sale or use occurred in whole or part within a federal area. But § 107 (a) provides that § 105 (a) "shall not be deemed to authorize the levy or collection of any tax on or from the United States or any instrumentality thereof . . . ." We directed that, upon remand, the District Court address and determine the questions whether the markup should be treated as a tax on sales occurring within a federal area within the meaning of § 105 (a), and, if so, whether the exception contained in § 107 (a) nevertheless preserves the federal immunity with respect to transactions with nonappropriated fund activities on the two exclusively federal enclaves. 412 U. S., at 378–379.

The Buck Act questions are irrelevant to the markup as applied to the two concurrent jurisdiction bases, and, therefore, the United States argued that the markup is a tax upon instrumentalities of the United States that is unconstitutional under *McCulloch* v. *Maryland,* 4 Wheat. 316 (1819). We directed that the District Court also address and decide the instrumentality argument on remand. 412 U. S., at 380–381.[5]

## II

On the remand the District Court held, as to the exclusively federal enclaves, that the markup constituted a "sales or use tax" within the meaning of § 105 (a) of the Buck Act, and that the exception in § 107 (a) for taxes upon federal instrumentalities was inapplicable because Regulation 25 imposes the legal incidence of the tax upon the distillers, and not upon any federal instrumentality, 378 F. Supp. 558, 570–573 (1974). For the same reason, the District Court held that the tax upon the sales to the two concurrent jurisdiction bases was not an unconstitutional tax upon instrumentalities of the United States. *Id.,* at 569. We again noted probable jurisdiction, 419 U. S. 1104 (1975). We reverse.

## III

The exception in § 107 (a) is plainly a congressional preservation of federal immunity from any state tax that

---

[5] The District Court was also directed on remand to determine the merits of the Government's argument that Regulation 25 was invalid under the Supremacy Clause because it constituted an attempt by the State to interfere with federal procurement regulations and policy, see 32 CFR § 261.4 (c) (1974), established by the Secretary of Defense pursuant to authority granted him by Congress. The District Court rejected the argument as without merit. 378 F. Supp. 558, 570–573 (1974). In light of our decision, we have no occasion to determine whether the District Court was correct.

would violate the principle of *McCulloch* v. *Maryland, supra,* prohibiting state taxation of instrumentalities of the United States. If Regulation 25 is invalid under that principle, it is invalid in its imposition of the markup upon all out-of-state purchases, both those destined for the nonappropriated fund activities on the exclusive jurisdiction bases, and those destined for those activities on the concurrent jurisdiction bases. We therefore turn to our reasons for concluding that Regulation 25 is an unconstitutional tax upon instrumentalities of the United States.

Before 1966, Mississippi prohibited the sale or possession of alcoholic beverages within its borders. In that year, however, the state legislature enacted the "Local Option Alcoholic Beverage Control Law," Miss. Code Ann. § 67–1–1 *et seq.,* which created the State Tax Commission as the sole importer and wholesaler of alcoholic beverages, not including malt liquor, in the State, Miss. Code Ann. § 67–1–41. The statute authorized the Tax Commission to purchase intoxicating liquors and sell them "to authorized retailers within the state including, at the discretion of the commission, any retail distributors operating within any military post . . . within the boundaries of the state, . . . exercising such control over the distribution of alcoholic beverages as seem[s] right and proper in keeping with the provisions and purposes of this chapter." *Ibid.* The legislature also directed the Commission to add to the cost of all alcoholic beverages a price markup designed to cover the cost of operation of the wholesale liquor business, yield a reasonable profit, and keep Mississippi's liquor prices competitive with those of neighboring States, Miss. Code Ann. § 27–71–11. Generally, the wholesale markup was 17% on distilled spirits and 20% on wine.

Pursuant to its statutory authority the Commission

promulgated Regulation 25 which gave post exchanges, officers' clubs, ship's stores, and other nonappropriated fund activities operating on military installations within Mississippi the option of purchasing alcoholic beverages directly from out-of-state distillers or from the Commission. The Regulation requires that orders from distillers bear the usual price markup as charged by the Commission on its sales, which the distiller in turn must remit to the Commission or face a fine, imprisonment, or delisting, *i. e.,* withdrawal of the privilege of distributing alcoholic beverages to the Commission for resale in Mississippi. See, *e. g.,* Miss. Code Ann. § 27–71–23. The various nonappropriated fund activities at the four military installations in Mississippi all chose to purchase their alcoholic beverages directly from out-of-state distillers, and thereby continued the practice begun when Mississippi was a "dry" State.

The District Court correctly determined that post exchanges and similar facilities are instrumentalities of the United States: "it is clear that the ship's stores, officers' clubs and post exchanges 'as now operated are arms of the government deemed by it essential for the performance of governmental functions . . . and partake of whatever immunities it may have under the constitution and federal statutes.' " 378 F. Supp., at 562–563. See also *Standard Oil Co.* v. *Johnson,* 316 U. S. 481 (1942); cf. *Paul* v. *United States,* 371 U. S. 245, 261 (1963). The District Court also correctly held that the markup constitutes a tax on the purchases made by the nonappropriated fund activities from out-of-state suppliers. The markup can only be understood as an "enforced contribution to provide for the support of government," the standard definition of a tax. *United States* v. *La Franca,* 282 U. S. 568, 572 (1931). The District Court held, however, that federal immunity from state taxation extends only to "a

state tax whose legal, as opposed to purely economic, incidence falls upon the federal government, its property or its instruments . . . ." 378 F. Supp., at 566.

In determining that the legal incidence of the Mississippi wholesale markup fell not upon the Federal Government but upon the out-of-state distillers, the District Court defined legal incidence as "the legally enforceable, unavoidable liability for nonpayment of the tax." *Ibid.* That was error. The Tax Commission, of course, has not attempted to collect the markup directly from the nonappropriated fund activities, but has instead compelled out-of-state suppliers to collect the markup for it. But that fact alone is not determinative that the markup is a tax on the suppliers rather than on the instrumentalities of the United States. In *First Agricultural Nat. Bank* v. *Tax Comm'n,* 392 U. S. 339 (1968), we squarely rejected the proposition that the legal incidence of a tax falls always upon the person legally liable for its payment. Massachusetts imposed a sales and use tax on purchases of tangible personal property, including purchases by national banks for their own use. The statute directed that " 'each vendor in this commonwealth *shall add to the sales price and shall collect from the purchaser the full amount of the tax imposed . . . .' " Id.,* at 347. Like the District Court here, the Supreme Judicial Court of Massachusetts stated: "The legal incidence of a tax [is] . . . determined by 'who is responsible . . . for payment to the state of the exaction.' " 353 Mass. 172, 177, 229 N. E. 2d 245, 249 (1967). Accordingly, the state court held that the legal incidence of the tax was on the vendor. We reversed, stating: "It would appear to be indisputable that a sales tax which by its terms must be passed on to the purchaser imposes the legal incidence of the tax upon the purchaser. . . . There can be no doubt from the clear wording of the

statute that the Massachusetts Legislature intended that this sales tax be passed on to the purchaser. For our purposes, at least, that intent is controlling." 392 U. S., at 347–348. See also *Gurley* v. *Rhoden, ante,* p. 200.

We see no difference between this markup and a sales tax which must be collected by the seller and remitted to the State. The Tax Commission would distinguish *First Agricultural Nat. Bank* on the ground that because the immunity of the national bank from state taxation in all but a few closely defined areas was conferred by statute, c. 267, 42 Stat. 1499, as amended, 12 U. S. C. § 548, the Court did not decide "the constitutional question of whether today national banks should be considered nontaxable as federal instrumentalities." 392 U. S., at 341. But the controlling significance of *First Agricultural Nat. Bank* for our purposes is the test formulated by that decision for the determination where the legal incidence of the tax falls, namely, that where a State requires that its sales tax be passed on to the purchaser and be collected by the vendor from him, this establishes as a matter of law that the legal incidence of the tax falls upon the purchaser.[6] That is plainly the requirement of Regulation 25. Regulation 25 provides that all direct orders by military facilities of alcoholic beverages from distillers "shall bear the usual wholesale

---

[6] See also *Federal Land Bank* v. *Bismarck Lumber Co.,* 314 U. S. 95 (1941). North Dakota imposed a sales tax and required retailers to add the tax to the sales price of goods, " 'and when added such taxes shall constitute a part of such price or charge, shall be a debt from consumer or user to retailer until paid, and shall be recoverable at law in the same manner as other debts. . . .' " *Id.,* at 97. A lumber company attempted to collect this tax from a national bank. *Bismarck* held that the requirement that the vendor pass on the tax placed the legal incidence on the purchaser, which was congressionally immunized from state taxation. *Id.,* at 99. Cf. *National Bellas Hess, Inc.* v. *Department of Revenue,* 386 U. S., 753, 757 n. 9 (1967).

markup in price," that the "price of such alcoholic beverages shall be paid by such organizations directly to the distiller," and that the distiller "shall in turn remit the wholesale markup" to the Tax Commission.[7] The Tax Commission clearly intended—indeed, the scheme unavoidably requires—that the out-of-state distillers and suppliers pass on the markup to the military purchasers. And to underscore this conclusion, the Director of the Alcoholic Beverage Control Division of the Tax Commission informed the distillers by letter that the wholesale markup "must be invoiced to the Military and collected directly from the Military (Club) or other authorized organization located on the Military base," warning that any distiller who sells alcoholic beverages to the military without "collecting said fee directly from said Military organization shall be in violation of the Alcoholic Beverage Control laws and regulations issued pursuant thereto," and subject to the penalties provided, including delisting. Plainly that ruling explicitly imposes the legal incidence of the tax upon the military.[8]

---

[7] The Mississippi state courts have not passed upon the matter of the legal incidence of the tax under Regulation 25, cf. *American Oil Co.* v. *Neill,* 380 U. S. 451, 455–456 (1965); *Gurley* v. *Rhoden, ante,* p. 200, and, in any event, "the duty rests on this Court to decide for itself facts or constructions upon which federal constitutional issues rest." *Kern-Limerick, Inc.* v. *Scurlock,* 347 U. S. 110, 121 (1954).

[8] The District Court's view that because "Mississippi's ABC [Alcoholic Beverage Control] Act and regulations do not impose any sanctions on the vendor if he absorbs all or any portion of the markup's economic burden," the Regulation does not actually require the passing on of the tax, 378 F. Supp., at 567, is without merit by virtue of *First Agricultural Nat. Bank.* "We cannot accept the reasoning of the court below that simply because there is no sanction against a vendor who refuses to pass on the tax (assuming this is true), this means the tax is on the vendor." 392 U. S., at 348. Indeed, the Tax Commission letter to the distillers threatens sanctions:

*Kern-Limerick, Inc.* v. *Scurlock,* 347 U. S. 110 (1954); and *Alabama* v. *King & Boozer,* 314 U. S. 1 (1941), buttress our conclusion. *Kern-Limerick* held unconstitutional, as regards sales to the United States, a state sales tax statute which purported to tax the seller, but provided that the seller " 'shall collect the tax levied hereby from the purchaser.' " 347 U. S., at 111. Similarly, the Alabama statute in *King & Boozer* required the seller to pay the sales tax, but also required him " 'to add to the sales price and collect from the purchaser the amount due by the taxpayer on account of said tax.' " 314 U. S., at 7. We held that the statute, by requiring the passing on of the tax and its collection from the purchaser, placed the legal incidence of the tax on the purchaser.

We hold, therefore, that viewing the markup as a sales tax, the legal incidence of that tax was intended to rest upon instrumentalities of the United States.[9] We turn therefore to consideration of the question

"Any supplier who ships or sells alcoholic beverages to Military organizations located within the boundaries of Mississippi without . . . collecting said fee directly from the said Military organization shall be in violation" of the statute and subject to its penalties, including delisting. Finally, even in the absence of this clear statement of the Tax Commission's intentions, obviously economic realities compelled the distillers to pass on the economic burden of the markup.

[9] *Polar Co.* v. *Andrews,* 375 U. S. 361 (1964), relied upon by appellees, is not contrary. That case involved a Florida tax upon the seller's activity of processing or bottling milk for sale on enclaves over which the Federal Government exercised exclusive jurisdiction. The tax was not a sales tax and there was no requirement that the amount of the tax be passed on to the federal purchasers. See also *Gurley* v. *Rhoden, ante,* p. 200, holding that the legal incidence of federal and state excise taxes on gasoline was on the producer-distributor of the gasoline who was not required to pass on the amount of the tax to his purchasers. And see *American Oil Co.* v. *Neill,* 380 U. S. 451 (1965); *Norton Co.* v. *Department of Revenue,* 340 U. S. 534 (1951).

whether the Buck Act is of assistance to the Tax Commission in its attempt to enforce Regulation 25.

## IV

The Buck Act was enacted in 1940 [10] to bar the United States, among other things, from asserting immunity from state sales and use taxes on the ground that "the Federal Government has exclusive jurisdiction over the area where the transaction occurred." S. Rep. No. 1625, 76th Cong., 3d Sess., 2 (1940). Section 105 (a) of the Buck Act provides:

> "No person shall be relieved from liability for payment of, collection of, or accounting for any sales or use tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, on the ground that the sale or use, with respect to which such tax is levied, occurred in whole or in part within a Federal area; and such State or taxing authority shall have full jurisdiction and power to levy and collect any such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area."

The District Court concluded that under this section "Congress has legislatively acceded to Mississippi's markup on . . . wholesale liquor transactions." 378 F. Supp., at 562.

Section 107 (a) of the Buck Act, however, contains a limitation upon the application of § 105 (a). It provides that § 105 (a) "shall not be deemed to authorize the levy or collection of any tax on or from the United

---

[10] Act of Oct. 9, 1940, c. 787, 54 Stat. 1059, codified as 4 U. S. C. § 105 *et seq.* by Act of July 30, 1947, § 105 *et seq.*, 61 Stat. 644.

States or any instrumentality thereof . . . ." [11] Although the District Court recognized that § 107 (a) "limits" § 105 (a), the court held that § 107 (a) was inapplicable in light of its holding that the legal incidence of the tax was on the distillers. Our reversal of the District Court in that respect and our holding that the legal incidence of the tax is upon the United States plainly brings § 107 (a) into play. The section can only be read as an explicit congressional preservation of federal immunity from state sales taxes unconstitutional under the immunity doctrine announced by Mr. Chief Justice Marshall in *McCulloch* v. *Maryland,* 4 Wheat. 316 (1819). "[U]nshaken, rarely questioned, . . . is the principle that possessions, institutions, and activities of the Federal Government itself in the absence of express congressional consent are not subject to any form of state taxation." *United States* v. *County of Allegheny,* 322 U. S. 174,

---

[11] The legislative history associated with the amendment of § 107 in 1954 describes the purpose of the section as follows: "Section 107 sets up certain exceptions to the power of States to tax in [federal] areas . . . ." See H. R. Rep. No. 1981, 83d Cong., 2d Sess., 2 (1954). See also S. Rep. No. 2498, 83d Cong., 2d Sess., 3 (1954).

Section 107 (a) provides: "The provisions of [§ 105 of this Act] shall not be deemed to authorize the levy or collection of any tax on or from the United States or any instrumentality thereof, or the levy or collection of any tax with respect to sale, purchase, storage, or use of tangible personal property sold by the United States or any instrumentality thereof to any authorized purchaser," 4 U. S. C. § 107 (a). An "authorized purchaser" is defined in § 107 (b) as one who buys goods from military commissaries, ship's stores, or similar voluntary unincorporated organizations. 4 U. S. C. § 107 (b), as amended, Act of Sept. 3, 1954, § 4, 68 Stat. 1227. There is no question that the portion of § 107 (a) dealing with a tax on or from the United States or any instrumentality thereof was intended to be distinct from the remaining portion of the section dealing with taxes on goods sold to an "authorized purchaser." See S. Rep. No. 1625, 76th Cong., 3d Sess., 3–4 (1940).

177 (1944). See also *Kern-Limerick, Inc.* v. *Scurlock,* 347 U. S., at 117–118.[12]  Regulation 25 is therefore outside the coverage of § 105 (a) and the markup is unconstitutional as a tax imposed upon the United States and its instrumentalities.

Nor does the Twenty-first Amendment require a different result.  When the case was last here we held that "the Twenty-first Amendment confers no power on a State to regulate—whether by licensing, taxation, or otherwise—the importation of distilled spirits into territory over which the United States exercises exclusive jurisdiction [pursuant to Art. I, § 8, cl. 17, of the Constitution]."  412 U. S., at 375; see *Collins* v. *Yosemite Park & Curry Co.,* 304 U. S. 518, 538 (1938). Cf. *James* v. *Dravo Contracting Co.,* 302 U. S. 134, 140 (1937).  We reach the same conclusion as to the concurrent jurisdiction bases to which Art. I, § 8, cl. 17, does not apply: "Nothing in the language of the [Twenty-first] Amendment nor in its history leads to [the] extraordinary conclusion" that the Amendment abolished federal immunity with respect to taxes on sales of liquor to the military on bases where the United States and Mississippi exer-

---

[12] *Polar Co.* v. *Andrews, supra,* does not support the Tax Commission's argument under the Buck Act.  In *Polar,* the Court rejected an attack by milk producers upon a Florida gallonage tax imposed upon milk distributed by them, including milk sold to military bases located within the State.  As to the sales to the military bases, over which the United States exercised exclusive jurisdiction, the Court indicated that consent to the imposition of the tax was to be found in § 105 of the Buck Act.  But the Court specifically distinguished situations, such as that presented here, where the tax falls "upon the facilities of the United States or upon activities conducted within these facilities . . . ."  375 U. S., at 382.  Rather, it pointed out that the "incidence of the tax appears to be upon the activity of processing or bottling milk in a plant located within Florida, and not upon work performed on a federal enclave or upon the sale and delivery of milk occurring within the boundaries of federal property." *Ibid.*

cise concurrent jurisdiction. *Department of Revenue
v. James B. Beam Distilling Co.,* 377 U. S. 341, 345–346
(1964); *Hostetter v. Idlewild Bon Voyage Liquor Corp.,*
377 U. S. 324 (1964). *James Beam* involved a Kentucky
tax upon the importation into that State of whiskey
produced in Scotland and transported through the United
States directly to bonded warehouses in Kentucky. The
Court held that the tax was prohibited by the Export-
Import Clause of the Constitution, Art. I, § 10, cl. 2, and
that the Amendment had not repealed that clause:

> "To sustain the tax which Kentucky has imposed
> in this case would require nothing short of squarely
> holding that the Twenty-first Amendment has com-
> pletely repealed the Export-Import Clause so far as
> intoxicants are concerned. Nothing in the language
> of the Amendment nor in its history leads to such
> an extraordinary conclusion. This Court has never
> intimated such a view, and now that the claim for
> the first time is squarely presented, we expressly
> reject it." 377 U. S., at 345–346.

*Hostetter* held that the Twenty-first Amendment did
not supersede the Commerce Clause, Art. I, § 8, cl. 3, so as
to permit the State of New York to prohibit the sale of
liquor, under the supervision of United States Customs,
to departing international airline passengers. We said
that "[s]uch a conclusion would be patently bizarre and
is demonstrably incorrect." 377 U. S., at 332. Simi-
larly, it is a "patently bizarre" and "extraordinary con-
clusion" to suggest that the Twenty-first Amendment
abolished federal immunity as respects taxes on sales to
the bases where the United States and Mississippi exer-
cise concurrent jurisdiction, and "now that the claim for
the first time is squarely presented, we expressly reject
it."

*Reversed.*

MR. JUSTICE DOUGLAS and MR. JUSTICE REHNQUIST dissent for the reasons stated in the dissenting opinion of MR. JUSTICE DOUGLAS in *United States* v. *State Tax Comm'n of Mississippi,* 412 U. S. 363, 381–390 (1973).